`

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERESA A. DUNSMOOR, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> Commissioner of Social Security, <br><br> Defendant. | No. CV-13-3119-RHW <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 15, 16. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On September 9, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 31, 2008. Tr. 19; 177. On January 24, 2011, Plaintiff filed a Title XVI application for supplemental security income, also alleging disability beginning December 31, 2008. Tr. 19; 177. Plaintiff indicated that she was unable to work due to: "spondylosis in neck, carpal tunnel syndrome, left kidney removed, stoma due to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

ulcerative colitis and diabetes type 2." Tr. 181. Plaintiff's claim was denied initially, denied upon reconsideration, and Plaintiff requested a hearing. Tr. 58-97; 103-07. On July 27, 2012, ALJ Sue Leise presided over a video administrative hearing from Portland, Oregon, at which vocational expert Amber Ruck, and Plaintiff, who was represented by counsel, testified. Tr. 33-56. The ALJ denied Plaintiff's claim on August 10, 2012. Tr. 19-27. The Appeals Council declined review. Tr. 1-3. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here. At the time of the hearing, Plaintiff was 52 years old, single, five-foot five inches tall, weighed 220 pounds, and she lived alone. Tr. 181; 200; 294. She completed the tenth grade in high school, earned a cosmetology license, and worked as a hair stylist for several years. Tr. 50-51.

Plaintiff testified that in 2008, she experienced migraine headaches about three times per month, and each headache could last for up to four days. Tr. 41-42. Plaintiff testified that she began experiencing problems with her hands in that same year, and her condition progressively deteriorated. Tr. 45. She also said that in 2008, neck pain and fatigue often prevented her from working. Tr. 41. Plaintiff explained her neck pain is the result of several discs and vertebrae pressing on her spinal cord, and the condition requires surgery. Tr. 45. She admitted that in 2008, her neck pain was less severe than at the time of the hearing. Tr. 45.

Plaintiff indicated that she can prepare simple meals, perform light housekeeping chores, and she shops about once per month for groceries. Tr. 202-03.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971)*. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This

burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his or her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

The ALJ found that Plaintiff met the insured status requirements through December 31, 2008. Tr. 21. At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 31, 2008, the alleged onset date. Tr. 21. At step two, the ALJ found Plaintiff had the following severe impairments: cervical spondylosis, diabetes, left wrist tendonitis, migraines and carpal tunnel syndrome bilaterally. Tr. 21. The ALJ concluded that since the alleged onset date of disability, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.929(d), 416.925 and 416.926). Tr. 22. The ALJ also found that on or before December 31, 2008, Plaintiff had the residual functional capacity ("RFC") to perform light work, with a few exertional limitations. Tr. 22.

The ALJ concluded that prior to December 31, 2008, Plaintiff was unable to perform past relevant work, and considering her age, education, work experience and RFC at that time, jobs existed in significant numbers in the national economy that she could have performed, such as cashier II, assembler production, and cleaner, housekeeper. Tr. 25-26.

By contrast, the ALJ concluded that since Plaintiff's application date for XVI supplemental security income filed on January 24, 2011, Plaintiff has the residual functional capacity to perform sedentary work. Tr. 24. As a result, beginning January 24, 2011, considering Plaintiff's age, education, work experience and RFC, no jobs exist in significant numbers in the national economy that the claimant can perform and thus, Plaintiff has been disabled since January 24, 2011. Tr. 27.

Plaintiff seeks review of the ALJ's determination that she was not disabled prior to December 31, 2008.

**ISSUES**

Plaintiff contends that the ALJ erred in determining she was not disabled prior to December 31, by: (1) improperly weighing the medical evidence; (2) formulating an RFC that failed to include all of Plaintiff's impairments, including the non-severe impairments; and (3) relying upon an incomplete hypothetical. ECF No. 15 at 12.

**1.    Medical Evidence.**

Plaintiff contends that the ALJ erred by giving little weight to the opinion from Plaintiff's treating physician Dr. Bothamley.[1] ECF No. 15 at 13. Specifically, Plaintiff argues that Dr. Bothamley's May 2011, opinion accurately described her condition as it existed in 2006. ECF No. 15 at 13.

On July 20, 2010, Dr. Bothamley completed a Physical Evaluation form, and he opined Plaintiff could perform sedentary work. Tr. 434. On that form, Dr. Bothamley indicated the onset date of the "primary impairment" as "~2008/2009."

---

[1] Plaintiff's issue statement charges that the ALJ erred by "failing to take into account the opinions from Dunsmoor's health care team." ECF No. 15 at 13. However, Plaintiff limited her briefing to an analysis of Dr. Bothamley's opinion, and thus the Court addresses only Dr. Bothamley's opinion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Tr. 433. The report listed diagnoses of cervical spondylosis, carpel tunnel syndrome and diabetes mellitus. Tr. 434.

On January 10, 2011, Dr. Bothamley completed a DSHS functional assessment, and opined Plaintiff could perform sedentary work. Tr. 493. Dr. Bothamley again diagnosed Plaintiff with cervical spondylosis, carpel tunnel syndrome and diabetes mellitus. Tr. 493. In this report, Dr. Bothamley again indicated the date of onset of the primary impairment was "~2008/2009." Tr. 492.

On May 19, 2011, Dr. Bothamley completed a Medical Report form that provided a blank space after the statement "the limitations specified in this report have existed since at least (please specify month and year)." Tr. 358. In the blank space, Dr. Bothamley wrote: "~2006." Tr. 358. Dr. Bothamley noted, "Patient had tried to work as a hairdresser up until Feb. '11." Tr. 358. The report listed chronic neck pain, headaches, abdominal pain, weakness in both hands, dizziness with a history of falls, and fatigue. Tr. 357. In this report, Dr. Bothamley opined, "unfortunately, most of the patient's conditions are likely to be chronic in nature and I feel that it is going to be difficult for her to be employed." Tr. 358.

On March 14, 2012, Dr. Bothamley completed a second Medical Report, and in the blank space after the statement "the limitations specified in this report have existed since at least (please specify month and year)," Dr. Bothamley wrote "February, 2011." Tr. 398. The report listed Plaintiff's symptoms as chronic foot pain, back and neck pain, headaches, dizziness, chronic fatigue, and finger numbness. Tr. 397.

The ALJ concluded that prior to December 31, 2008, the date of last insured, Plaintiff could not perform past relevant work, but jobs existed in significant numbers that Plaintiff could perform. Tr. 26. However, as of January 24, 2011, the filing date for supplemental security income, the ALJ found that no jobs exist

that Plaintiff can perform, and therefore she has been disabled since January 24, 2011.  Tr. 27.

In finding that Plaintiff was disabled after January, 2011, the ALJ relied, in part, upon the opinion of Dr. Bothamley.  Tr. 24-25.  The ALJ noted that on May 19, 2011, Dr. Bothamley's report revealed that Plaintiff's neck pain, headaches, bilateral hand pain and fatigue are all chronic conditions, her chance for improvement was poor, and she would likely miss on average four or more days from work per month.  Tr. 25.

Plaintiff contends that the May 19, 2011, note was "meant to include the time period since 2006," and the ALJ erred by finding disability began in January 2011, instead of finding she was disabled as of December 31, 2008.  ECF No. 15 at 13.  Plaintiff argues that the record "prior to 2008 is replete with medical information that should support a decision of disability."  ECF No. 15 at 14.  Plaintiff's assertion is contradicted upon review of the record.

 On February 21, 2008, Plaintiff visited the emergency room complaining of acute abdominal pain.  Tr. 245-56.  An abdominal/pelvic CT scan revealed "new adhesion upper abdomen causing marked angulation of the proximal small bowel," but no evidence of "bile destruction."  Tr. 252.  The report also revealed "an enlarging, irregularly septated fluid collection in the pelvis Nile [sic] greater than 7.7 cm," that the emergency room doctor suspected was "ovarian in nature."  Tr. 252.  Plaintiff showed no signs of infection or obstruction, and because the pain was "better controlled," she chose to manage her pain at home.  Tr. 252.  The attending physician recommended Plaintiff follow up with her gynecologist, and told her to also follow up with David Tuning within seven to ten days.  Tr. 252.

About seven weeks later, on April 14, 2008, Plaintiff saw David Tuning, PA-C, to discuss her migraine headaches.  Tr. 337.   The chart note contains no complaints related to Plaintiff's abdomen.  The following month, Plaintiff

presented to Jennifer Lentz, M.D., with arm pain, and the chart note similarly contains no complaints related to Plaintiff's abdomen. Tr. 336. During Plaintiff's follow up visit on May 22, 2008, Plaintiff related that she had worked on "12-14 hair styles today," and she planned to play the drums at a concert a few days later. Tr. 335.

Plaintiff's doctor visits in August and October of 2008 involved complaints of tendonitis, staph skin infection, hypothyroidism and elevated blood sugar monitoring. Tr. 333-34. In November, 2008, Plaintiff returned from a trip to California "remarkably improved," after taking Propanolol, and Mr. Tuning reported she was "using much less pain medicine than she was previously." Tr. 332.

On November 13, 2008, Plaintiff saw Jeffrey R. Mathison, M.D., complaining of pain, tingly and numbness in both her arms and hands. Tr. 282. Dr. Mathison noted evidence of cervical radiculopathy and hypertrophic adipose tissue in her arms, and he recommended neurological evaluation "to rule out some sort of cervical spine abnormality causing pressure on her cervical nerve roots." Tr. 282.

Plaintiff saw Mr. Tuning on November 12, 2009, for a "GAU exam regarding her continued fatigue, ability, headache pains [and] dizziness." Tr. 331. On December 2, 2009, Plaintiff followed Dr. Mathison's 2008 recommendation and was examined by neurologist Emily Moser, M.D., who opined that Plaintiff's symptoms were not caused by radiculopathy, but instead were caused by distal entrapment. Tr. 297-98. Dr. Moser recommended Plaintiff undergo electrodiagnostic studies and a cervical spine MRI to rule out proximal compression. Tr. 298. In January, 2010, Dr. Moser noted that the studies revealed no evidence of radiculopathy, and she diagnosed Plaintiff with carpal tunnel syndrome. Tr. 296.

Contrary to Plaintiff's argument, the 2008 medical records do not establish that Plaintiff was disabled prior to her date of last insured, December 31, 2008. Instead, the evidence reveals that Plaintiff continued to work as a hairstylist through 2010, and the medical examinations revealed carpal tunnel syndrome. Tr. 294; 301; 314-18.

Also, Plaintiff places too great an emphasis on Dr. Bothamley's May 2011, assessment indicating that her "limitations" existed since around 2006. Both the question and answer on the fill-in-the-blank form are ambiguous. The question asks the physician to provide a month and year "the limitations specified in this report have existed since." Tr. 358. The question does not ask the physician's opinion about how long the limitations have existed at the current severity. The mere existence of "limitations" could simply mean that Plaintiff's impairment was in the early stages – for example, diabetes – but that in 2006, her symptoms were not severe or debilitating. Without additional information or explanation, the evidence that Plaintiff's limitations merely existed in 2006, does not establish Plaintiff was disabled as of December 31, 2008. The evidence fails to support Plaintiff's argument. The ALJ did not err in weighing Dr. Bothamley's opinion.

**2.    Plaintiff's Residual Functional Capacity.**

Plaintiff argues that her December 31, 2008 RFC failed to incorporate both her severe and non-severe impairments. Plaintiff again advances the argument that the severity of the limitations existing in 2011, as assessed by Dr. Bothamley, accurately reflects the severity of her limitations existing in December, 2008. ECF No. 15 at 16-17.

An RFC is not a medical determination but an administrative finding or legal decision reserved to the ALJ based on consideration of all the relevant evidence, including medical evidence, lay witness and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all

the relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006).

The opinion of a treating physician should be given great deference, but it "is not necessarily conclusive as to either the [claimant's] physical condition or the ultimate issue of disability." *Morgan*, 169 F.3d at 600. If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion by providing specific and legitimate reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).

In this case, the ALJ's finding that Plaintiff was capable of performing light work in December, 2008, was reasonable. First, as analyzed above, Plaintiff's argument that Dr. Bothamley's May 2011, opinion accurately reflected the severity of her impairments as of December 31, 2008, is not persuasive. Second, even if Dr. Bothamley's opinion definitively established Plaintiff's impairments in 2008, an ALJ is not required to give controlling weight to an opinion that is effectively a vocational rather than a medical opinion, because the determination of disability is reserved for the ALJ. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (treating physician's opinion is not necessarily conclusive as to the ultimate issue of disability).

Plaintiff also argues that the ALJ erred by giving more weight to a reviewing doctor than to Plaintiff's treating physician. ECF No. 15 at 16-18. The ALJ gave great weight to the opinion of examining physician Charles Wolfe, M.D., in part because it was the "only acceptable medical source opinion focusing on the claimant's health about her date of last insured." Tr. 24.

On February 9, 2011, Charles Wolfe, M.D., completed a Disability Determination Explanation. Tr. 67-73. After reviewing Plaintiff's medical records, Dr. Wolfe indicated that on Plaintiff's date of last insured, December 31,

2008, Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, stand and/or walk about six hours and sit about six hours in an eight hour workday. Tr. 71. Dr. Wolfe concluded that Plaintiff was not disabled. Tr. 73.

The record is devoid of a treating physician's opinion that specifically assesses Plaintiff's abilities and limitations on December 31, 2008. As analyzed above, Dr. Bothamley's report does not specifically address the severity of Plaintiff's limitations existing prior to the report date of May, 2011. In evaluating a medical opinion, the ALJ properly considers the amount of evidence supporting the opinion and the quality of the explanation provided. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Under these circumstances, the ALJ's reliance upon Dr. Wolfe's assessment that explicitly indicated Plaintiff's abilities on December 31, 2008, after his review of Plaintiff's medical file, was not error.

3.     **Incomplete Hypothetical.**

Plaintiff argues that the ALJ erred by "ignoring" the opinion of the vocational expert who opined that a hypothetical worker who missed two or more work days per month and needed to nap on the job, would be unable to sustain gainful employment. ECF No. 15 at 15.

Plaintiff's underlying argument is that the ALJ should have accepted and incorporated into her December 31, 2008, RFC the limitations identified by Dr. Bothamley in May, 2011. Plaintiff reasons that because the hypothetical question posed to the vocational expert failed to include Plaintiff's need for mid-day naps and the likelihood she would be absent two or more days per month, the ALJ relied upon an incomplete hypothetical in finding Plaintiff was not disabled prior to December 31, 2008. ECF No. 15 at 15.

During the administrative hearing, the vocational expert testified that a worker who needed to lie down for at least one hour during the work day, outside

of scheduled breaks, would not be able to sustain competitive employment.  Tr. 53.  Also, the vocational expert testified that a worker who missed two or more days per month would be incapable of sustaining competitive employment.  Tr. 54.

The hypothetical that ultimately served as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id.*(citation omitted).  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir.2006).   A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson*, 539 F.3d at 1175-76.

In this case, Plaintiff simply reiterates her argument that the ALJ should have fully credited Dr. Bothamley's opinion that she would miss four or more days of work per month, and the opinion she would have to lie down for 3-5 hours five days per week, and the ALJ should have found that these limitations existed in December, 2008.  ECF No. 15 at 15-16.  As analyzed above, the ALJ's conclusion that the Plaintiff failed to provide evidence she was disabled prior to December 2008, was supported by substantial evidence.  As such, Plaintiff's argument that the ALJ erred by relying upon an incomplete hypothetical fails.

///

///

///

# CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment (**ECF No. 16**) is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (**ECF No. 15**) is **DENIED**.

3. The District Court Executive is directed to enter Judgment in favor of Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel, and **close the file**.

**DATED** this 10th day of October, 2014.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge